Joseph P. CARSON, Petitioner,

v.

**DEPARTMENT OF ENERGY,**
**Respondent.**

No. 03–3060.

United States Court of Appeals,
Federal Circuit.

DECIDED: May 13, 2003.

Before MICHEL, Circuit Judge, ARCHER, Senior Circuit Judge, and LOURIE, Circuit Judge.

## DECISION

PER CURIAM.

Joseph P. Carson appeals from the final decision of the Merit Systems Protection Board denying his request for consequen-

tial damages resulting from his successful individual right of action ("IRA") appeal. *Carson v. Dep't of Energy,* 92 M.S.P.R. 440 (2002) (*"Final Decision"*). We affirm.

## BACKGROUND

Mr. Carson began his employment in the Department of Energy ("DOE") in 1990, serving as an "EH Resident" in the Office of Environment, Safety and Health at the Oak Ridge National Laboratory in Oak Ridge, Tennessee. *Carson v. Merit Sys. Prot. Bd.,* No. 00–3237, 2000 WL 1720671, at *1, 2000 U.S.App. LEXIS 29289, at *1–2 (Fed.Cir. Nov. 16.2000). During his employment at that facility, Carson made numerous disclosures of alleged fraud, waste, abuse, and safety violations. *Id.* at *1, 2000 U.S.App. LEXIS 29289, at *2. Subsequently, in 1997, DOE removed certain duties from Carson's work responsibilities, issued a letter admonishing him, and reassigned him to DOE's offices in Germantown, Maryland. *Id.* Carson filed several IRA appeals to the Board, claiming that DOE had retaliated against him for protected whistleblowing. The Board granted Carson's request for corrective action and ordered DOE to provide him with interim relief. *Final Decision* ¶ 2.

On June 28, 2000, Carson filed a request for consequential damages, pursuant to 5 U.S.C. § 1221(g)(1)(A)(ii), seeking the following relief: $244,700 in pecuniary losses, restoration of 1100 hours of annual leave and sick leave that he had taken since 1997, compensation for approximately 200 hours of leave without pay that he had taken since 1997, and certain non-pecuniary damages. *Carson v. Dep't of Energy,* Nos. AT–1221–98–0250–P–3, AT–1221–98–0623–P–3, slip op. at 1–3, 6 n. 5 (MSPB Mar. 28, 2001) (*"Initial Decision"*). The administrative judge ("AJ") issued an ini-

tial decision in which he granted in part and denied in part Carson's motion. First, the AJ denied Carson's request for non-pecuniary damages, noting that the statutory term "consequential damages" has been interpreted to exclude non-pecuniary losses. *Id.* at 2 (citing *Bohac v. Department of Agriculture*, 239 F.3d 1334 (Fed. Cir.2001)). Second, the AJ denied Carson's request for damages for his and his wife's personal time spent working on his appeal because such losses are speculative and non-pecuniary. *Id.* at 3. Third, the AJ rejected Carson's claim for costs relating to newspaper advertisements and development of a web site, finding that those expenses were neither necessary nor were they consequences resulting from DOE's actions. *Id.* at 3–4. Fourth, rejecting evidence that Carson submitted after the close of record and without good cause, the AJ denied Carson's claim for certain taxes and accounting fees on the ground that Carson had failed to present any evidence showing that those expenses were incurred as a result of DOE's retaliation against him for whistleblowing. *Id.* at 4. Fifth, the AJ granted Carson $4788.03 for the costs of preparation of an amicus brief filed by the American Engineering Alliance ("AEA"), a professional organization to which Carson belongs. *Id.* at 4–5. Finally, accepting Carson's declaration that he was required to take hundreds of hours of personal time and leave due to the stress, fatigue, and illness caused by DOE's retaliatory actions, the AJ ordered DOE to restore all of Carson's annual leave and sick leave between January 1, 1997 and February 3, 2000 and to compensate Carson for all leave without pay during that period. *Id.* at 5–7.

Carson filed a petition for review of the AJ's decision, contesting only the AJ's denial of consequential damages for his additional taxes and accounting fees. DOE filed a cross-petition for review in which it challenged the AJ's award of damages for the AEA amicus brief and the amount of annual leave, sick leave, and leave without pay that the AJ ordered to be restored or reimbursed. The full Board denied Carson's petition; granted in part and denied in part DOE's cross-petition; and, addressing the issue on its own motion, denied Carson's motion for consequential damages for the leave he took from work. *Final Decision* ¶ 1. The Board found that Carson failed to present any new and material evidence relating to his request for consequential damages for taxes and accounting fees, and therefore denied his petition for review on that issue. *Id.* ¶ 7. The Board also found that the AJ erred in awarding Carson $4788.03 for the AEA amicus brief on the grounds that attorney fees and associated legal costs are not consequential damages and that an amicus curiae is not an adversarial party entitled to attorney fees. *Id.* ¶¶ 8–10. Finally, addressing on its own motion whether damages may be awarded for leave taken, the Board determined that Carson was not entitled to consequential damages for the annual leave, sick leave, and leave without pay that he used allegedly as a result of DOE's unlawful reprisal. The Board observed that, after the AJ issued the initial decision in this case, the Board held in *Reams v. Department of the Treasury*, 91 M.S.P.R. 447, ¶¶ 8, 14 (2002), that consequential damages do not include reimbursing an appellant for annual leave expended in pursuing an IRA appeal. *Final Decision* ¶ 12. Applying the rationale of *Reams,* the Board found that consequential damages similarly do not include leave without pay expended in pursuing an IRA appeal. *Id.* ¶ 13. Moreover, the Board found that, even assuming that restoration of sick leave is payable as "medical costs incurred" under 5 U.S.C. § 1221(g)(1)(A)(ii), Carson had not submit-

ted any evidence showing that he used hundreds of hours of sick leave as a result of DOE's whistleblowing reprisal. *Id.* ¶¶ 14–15. Accordingly, the Board denied Carson's request for consequential damages for the annual leave, sick leave, and leave without pay between 1997 and 2000.

Carson timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our scope of review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed.Cir.1998).

Congress enacted the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (codified as amended in scattered sections of 5 U.S.C.) ("WPA"), to strengthen the protections available to federal whistleblowers from reprisals for protected disclosures. Under the WPA as originally enacted, a prevailing employee in an IRA could recover, in addition to corrective action, only "reasonable attorney's fees and any other reasonable costs incurred." 5 U.S.C. § 1221(g)(1)-(2) (Supp. I 1989). Congress amended the WPA in 1994 to provide additional rights and remedies for protected whistleblowers. Pub.L. No. 103–424, § 8(b)(2), 108 Stat. 4361, 4365 (codified at 5 U.S.C. § 1221(g) (2000)). In its amended form, § 1221(g) provides that "corrective action" by the Board may include:

(i) that the individual be placed, as nearly as possible, in the position the individual would have been in had the prohibited personnel practice not occurred; and

(ii) back pay and related benefits, medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential [damages].[1]

5 U.S.C. § 1221(g)(1)(A) (2000).

The question before us on appeal is whether the various alleged damages that Carson seeks are recoverable as "consequential damages" under 5 U.S.C. § 1221(g)(1)(A)(ii). Carson argues that the Board read § 1221(g) so narrowly as to deny corrective action for pecuniary losses incurred by the very individuals – *i.e.*, meritorious whistleblowers – for whose protection Congress enacted the WPA. In Carson's view, the Board improperly "explained away all the pecuniary losses that [he] has suffered" as a result of DOE's unlawful reprisal. Carson thus contends that the Board erred in ruling that he is not entitled to consequential damages for the taxes and accounting fees that he incurred; the amicus brief that the AEA submitted; and the sick leave, annual leave, and leave without pay that he took "to deal with the suffering he and his family ... endured in confronting the agency's unlawful actions." We discuss each of these contentions in turn.

### A. *Taxes and Accounting Fees*

■ Carson first challenges the Board's denial of damages for the additional taxes he allegedly incurred as a result of DOE's unlawful reprisal. Carson maintains that he submitted "clear evidence" of his increased tax liability and that he provided an "adequate reason" for his delay in sub-

---

1. The actual text of § 1221(g)(1)(A)(ii) provides for recovery of "consequential changes." The reference to "changes," how- ever, has been viewed as a mistake and has been construed to mean "damages." *Bohac,* 239 F.3d at 1338–39.

mitting that evidence. Carson also objects to the Board's rejection of the supplemental information that he provided while his petition for review was pending. The government responds that the Board did not err in affirming the AJ's refusal to consider Carson's evidence regarding taxes and accounting fees because Carson submitted that evidence in an untimely fashion and failed to provide a reason why that evidence was not available before the record closed.

We agree with the government that the Board properly denied Carson's petition for review relating to his request for consequential damages for taxes and accounting fees. To begin with, Carson presented no evidence to the AJ to support his assertion that he incurred taxes and accounting fees as a result of DOE's retaliation against him, even after the AJ advised him to submit bills for the claimed damages. *Initial Decision,* slip op. at 4. Although Carson attempted to file such evidence after the close of record, the AJ was entitled to reject that submission because Carson failed to show good cause for his untimely filing. *See* 5 C.F.R. § 1201.58(c) (2002) ("Once the record closes [in an appeal to the Board], no additional evidence or argument will be accepted unless the party submitting it shows that the evidence was not readily available before the record closed."). In his informal brief to us on appeal, Carson's bare assertion that he provided an "adequate reason" for the delay is not sufficient to show that the AJ erred in rejecting the untimely evidence. Acceptance of untimely-filed evidence is generally within the discretion of a trial judge whose decisions on such matters are rarely reversed on appeal.

Moreover, the Board properly denied Carson's petition for review on the issue of taxes and accounting fees, as he failed to show any error in the AJ's decision or to present any new and material evidence on that issue. *See* 5 C.F.R. § 1201.115(d) (2002) ("The Board . . . may grant a petition for review when it is established that: (1)[n]ew and material evidence is available that, despite due diligence, was not available when the record closed; or (2)[t]he decision of the [AJ] is based on an erroneous interpretation of statute or regulation."). Nor did the Board err in refusing to consider the supplemental information that Carson submitted to the Board after the record closed. *See* 5 C.F.R. § 1201.114(i) (2002) ("Once the record closes [in a petition for review of an initial decision], no additional evidence or argument will be accepted unless the party submitting it shows that the evidence was not readily available before the record closed."). On appeal, Carson still offers no reason, let alone a persuasive one, as to why he could not have submitted that evidence earlier. Thus, because he failed to timely submit any evidence proving that he incurred taxes and accounting fees as a result of DOE's unlawful reprisal and because he has not shown that he should have been permitted to submit such evidence to the AJ or to the Board after the close of the record, Carson has not met his burden of proving that the Board's denial of his petition for review on this issue was in error.

B. *Amicus Curiae Brief*

' Carson also challenges the Board's decision reversing the AJ's award of $4788.03 in damages for the costs that Carson incurred for the AEA amicus brief. Carson argues that those costs are not attorney fees, but pecuniary losses that are recoverable as consequential damages. In response, the government contends that the Board correctly held that Carson is not entitled to damages for the costs of the amicus brief, as those costs are neither

consequential damages nor recoverable attorney fees and expenses.

█ We agree with the government that Carson is not entitled to recover damages for any costs he incurred in connection with the AEA amicus brief. According to the record, Carson submitted a bill for $4788.03, comprised of $3600 in attorney fees and $1188.03 in expenses, "for the attorney who assisted in preparing the amicus curiae brief." *Final Decision* ¶ 8. The record also suggests that Carson assisted in researching and preparing the brief himself. *Id.* Although the AJ found the costs for the amicus brief to be "a reasonable and foreseeable consequence of retaliation for whistleblowing" and thus awarded Carson $4788.03 in consequential damages, *Initial Decision,* slip op. at 5, the full Board reversed that award on the ground that attorney fees and associated legal costs are not consequential damages, *Final Decision* ¶ 9.

We agree with the Board that costs for an amicus brief are not consequential damages within the meaning of the statute. The costs that Carson incurred in preparing the amicus brief are in the nature of legal costs, which are statutorily distinct from "consequential damages." As discussed above, the WPA provides that corrective action for a prevailing party in an IRA appeal "may include ... reasonable and foreseeable consequential [damages]." 5 U.S.C. § 1221(g)(1)(A)(ii) (2000). A separate provision of the WPA, however, sets forth the legal costs that a prevailing party may recover, providing that corrective action "shall include attorney's fees and costs." *Id.* § 1221(g)(1)(B). As a matter of statutory construction, it would be illogical to interpret the term "consequential damages" in the former provision to include legal expenses, the subject of the latter provision. Moreover, to the extent that Carson seeks monetary relief for his own efforts in researching and preparing the amicus brief, he is not entitled to consequential damages because he may not be compensated for his own time spent pursuing his appeal. *See Bohac,* 239 F.3d at 1339 (limiting consequential damages under the WPA to reimbursement of out-of-pocket expenses); *see also Pickholtz v. Rainbow Techs., Inc.,* 284 F.3d 1365, 1375–76 (Fed.Cir.2002) (observing that there is no direct financial "expense" associated with the expenditure of one's own time); *Naekel v. Dep't of Transp.,* 845 F.2d 976, 980 (Fed.Cir.1988) (holding that a *pro se* litigant may not receive payment under the Back Pay Act for his own time expended because such payment would be beyond the statutory purpose of making the employee-litigant reasonably whole).

█ Having concluded that the costs of an amicus brief are not consequential damages, we next address the Board's holding that Carson is not entitled to attorney fees for the amicus brief. The WPA provides that a "prevailing party" in an IRA is entitled to "reasonable attorney's fees and any other reasonable costs incurred." 5 U.S.C. § 1221(g)(2)-(3) (2000). However, because an amicus curiae is expressly not a party to an appeal before the Board, 5 C.F.R. § 1201.34(e) (2002), Carson is not entitled to recover those legal costs, which extend beyond those incurred in his own representation. An amicus curiae is a friend of the court, *i.e.,* the tribunal to which its brief is presented. It is not a prevailing party. Thus, "reasonable attorney's fees" under the statute do not extend to friends of the court who choose to advance their own interests or even what they perceive to be the public interest, even if they coincide with the position of a party whom they are supporting. Moreover, since the statute specifically provides for reasonable attorney's fees for a party, the phrase "other reasonable costs" must

refer to costs other than attorney's fees, and therefore do not encompass attorney's fees of an amicus. *See Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 581, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946) ("[C]ompensation is not the normal reward of those who offer such services [amici who represent the public interest]."); *A. Hirsh, Inc. v. United States*, 948 F.2d 1240, 1250–51 (Fed.Cir.1991) (holding that an amicus who voluntarily appeared before the court could not be awarded sanctions in the form of legal costs under 28 U.S.C. § 1927); *Morales v. Turman*, 820 F.2d 728, 732 (5th Cir.1987) (holding that amici are not entitled to fees under 42 U.S.C. § 1988 because they are not parties to the litigation). Nor may Carson, who is not an attorney, recover attorney fees and costs for his own efforts in researching and preparing the amicus brief. *See Pickholtz*, 284 F.3d at 1375–76 (noting that "attorney fees" require an attorney-client relationship). Accordingly, we conclude that the Board did not err in reversing the AJ's award of damages for the amicus brief.

### C. *Annual Leave, Sick Leave, and Leave Without Pay*

■ Finally, Carson challenges the Board's decision reversing the AJ's awards of restored annual leave, restored sick leave, and compensation for leave without pay. Carson argues that he is entitled to consequential damages for such leave because those hours of leave, which can be converted into compensation upon leaving federal service, are reasonable pecuniary losses that occurred as a consequence of DOE's unlawful actions. Moreover, Carson asserts that the Board misapplied *Bohac*, which he reads as requiring that reasonable pecuniary losses be awarded to prevailing whistleblowers. In addition, Carson argues that if the grounds for awarding restoration of his sick leave were

not adequately established in the case record, the Board should have remanded that issue to the AJ with instructions as to what would constitute sufficient evidence to support restoration of his sick leave.

The government responds that the Board correctly held that restoration of annual leave and sick leave and reimbursement for leave without pay are not consequential damages. According to the government, the term "consequential damages" in 5 U.S.C. § 1221(g)(1)(A)(ii) is limited to reimbursement of out-of-pocket costs and does not include leave voluntarily used to pursue an appeal before the Board. With regard to Carson's sick leave, the government argues that Carson failed to present any evidence showing that he was diagnosed with a medical condition or sought treatment for stress or illness during his sick leave or that there was a nexus between DOE's reprisal and any illness.

We agree with the government that the Board did not err in reversing the AJ's awards of restored annual and sick leave and compensation for leave without pay. In *Bohac v. Department of Agriculture*, 239 F.3d 1334 (Fed.Cir.2001), we examined the meaning of the term "consequential damages" in 5 U.S.C. § 1221(g)(1)(A)(ii). Rejecting the argument that we should adopt that term's common law meaning, we held that "consequential damages," as used in § 1221(g), are limited to reimbursement of out-of-pocket costs and do not include non-pecuniary damages. *Id.* at 1339–43. Carson's request for consequential damages for the leave that he took, however, are not out-of-pocket costs. Restored leave or monetary compensation for the leave that Carson voluntarily took from his job to pursue his appeal before the Board would effectively be compensation for Carson's own time, rather than reimbursement of an out-of-pocket ex-

pense. In addition, to the extent that he took leave due to stress and fatigue, Carson's request is akin to a request for non-pecuniary damages. That Carson has characterized his request for damages in terms of hours of leave to be restored or compensated does not change the essential nature of the damages he seeks. We thus conclude that leave voluntarily taken from work to pursue an appeal is not a reimbursable out-of-pocket expense and that Carson is therefore not entitled to consequential damages for annual leave, sick leave, and leave without pay.

█ We also agree with the Board that Carson is not entitled to restoration of sick leave under § 1221(g)(1)(A)(ii)'s provision for damages for "medical costs incurred." Before both the AJ and the full Board, Carson asserted that he took 400 hours of sick leave due to the stress, fatigue, and illness caused by DOE's unlawful actions. On appeal, Carson argues that the Board should have remanded the issue of sick leave to the AJ with instructions as to what would constitute sufficient evidence. However, both the AJ and the Board notified Carson that he must prove his claimed damages with specificity and must establish that his claimed damages were reasonable, foreseeable, and causally related to DOE's whistleblowing reprisal. *Final Decision* ¶ 15. Nevertheless, the only evidence that Carson submitted to prove his claim for restored sick leave was his leave and earning statements. In light of those facts, we conclude that the Board gave Carson sufficient instruction on his evidentiary burden and properly concluded that Carson had not proved that he was entitled to compensation for sick leave as a "medical cost incurred." [2]

2. Like the Board, we express no opinion as to whether any type of leave may ever be re-

## CONCLUSION

We conclude that the Board did not act arbitrarily or capriciously, abuse its discretion, commit legal error, or lack substantial evidence in its decision denying Carson's petition for review of the AJ's denial of consequential damages for taxes and accounting fees; reversing the AJ's award of damages for the costs of the AEA amicus brief; and reversing the AJ's awards of restored annual leave, restored sick leave, and compensation for leave without pay. Accordingly, the Board's decision is affirmed.

stored as a "medical cost[ ] incurred" under § 1221(g)(1)(A)(ii).